# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

MEGHAN MCCRANE, individually
and on behalf of a class of all persons and
entities similarly situated,

      Plaintiff,

vs.                                                                               Case No.

RPA ENERGY INC. d/b/a
GREEN CHOICE ENERGY and
AGR GROUP NEVADA, LLC

      Defendants.

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2. Plaintiff Meghan McCrane brings this action under the TCPA alleging that Defendant AGR Group Nevada, LLC sent her pre-recorded telemarketing calls for purposes of promoting RPA Energy Inc.'s goods and services without her prior express written consent.

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, she sues on behalf of a proposed nationwide class of other persons who received similar calls.

4. A class action is the best means of obtaining redress for the Defendants' telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Meghan McCrane resides in New Jersey.

6. Defendant RPA Energy Inc. is a Delaware corporation with its principal place of business in this District. RPA Energy Inc.'s registered agent for service of process is: Incorp Services, Inc., One Commerce Plaza, 90 Washington Ave., Suite 805A, Albany, New York 12210-2822.

7. AGR Group Nevada LLC is a Nevada limited liability company. AGR Group signed an agreement with RPA Energy Inc. in New York to conduct marketing of RPA services.

## Jurisdiction & Venue

8. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the agreement automated calls to the Plaintiff—occurred from this District.

**Statutory Background**

<u>THE TCPA</u>

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of Section 227(b)(1)(A). 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted).

### Factual Allegations

16. Plaintiff McCrane is a "person" as defined by 47 U.S.C. § 153(39).

17. RPA Energy is in the energy marketing business.

18. To generate new customers, RPA Energy relies on telemarketing.

19. The telemarketing that RPA Energy engages in, itself or through a vendor, includes the use of pre-recorded messages.

20. Ms. McCrane's number, 862-281-XXXX, is assigned to a cellular telephone service.

21. Ms. McCrane was called by AGR Group on June 8 and June 14, 2021.

22. Ms. McCrane rejected the first call.

23. When Ms. McCrane received the second call a recorded message regarding energy services played.

24. The recorded message advertised the opportunity to reduce her utility bill.

25. This is a service promoted by the Defendant through its deregulated energy services.

26. The caller was not identified at the outset of the call.

27. The Caller ID for the call was (908) 525-1104.

28. NoMoRobo, who won the FTC's competition for tracking robocalls, as a "robocaller", has reported that Caller ID as a "robocaller". *See* https://www.nomorobo.com/lookup/908-525-1104

29. Speaking with the caller from that number identifies as "Green Choice Energy".

30. That is a d/b/a for RPA Energy.

31. However, from correspondence with RPA Energy prior to filing, it was AGR Group that physically dialed the call for RPA Energy.

32. Ms. McCrane and others who received these calls were temporarily deprived of legitimate use of their phones and their privacy was invaded.

### RPA's Liability for AGR Group's Conduct

33. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

34. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

5

35. In fact, the Federal Communication Commission has instructed that sellers such as RPA Energy may not avoid liability by outsourcing telemarketing to third parties, such as AGR Group:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

36. RPA Energy is liable for AGR Group because it controls the manner and means of its telemarketing methods by:

    a)    acquiescing to their business mode of using a call center;

    b)    instructing them on the geographic regions they can make calls into;

    c)    providing qualifications for potential clients to be sent to RPA Energy;

    d)    providing them with approved scripting to use; and

    e)    directing them to use a third party verification service for new customers.

37. RPA Energy knew (or reasonably should have known) that AGR Group was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

38. Any reasonable seller that accepts telemarketing call leads from agents engaged in telemarketing would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

39.     RPA Energy had previously received complaints that its third party vendors made pre-recorded calls on its behalf.

40.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

41.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff sues on behalf of other persons or entities throughout the United States.

42.     The proposed class are tentatively defined as:

Plaintiff and all persons within the United States: (1) to whose cellular telephone number AGR Group placed a telemarketing call (2) within the four years prior to the filing of the Complaint (3) using the same or substantially similar pre-recorded message used to place telephone calls to Plaintiff (4) that could have generated a lead for the Defendant.

43.     The Plaintiff is a member of the class.

44.     Excluded from the class are the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

45.     Class members are identifiable through phone records and phone number databases that will be obtained through discovery.

46.     Based on the automated nature of telemarketing campaigns, there are likely thousands of class members. Individual joinder of these persons is impracticable.

47. There are questions of law and fact common to Plaintiff and the proposed class, including:

   a. Whether the Defendant used a pre-recorded message to send telemarketing calls;

   b. Whether the Defendant placed telemarketing calls without obtaining the recipients' valid prior express written consent;

   c. Whether RPA Energy is vicariously liable for the conduct of AGR Group;

   d. Whether the Defendant's TCPA violations were negligent, willful, or knowing; and

   e. Whether the Plaintiff and the class members are entitled to statutory damages because of the Defendant' actions.

48. Plaintiff's claims are based on the same facts and legal theories as class members, and therefore are typical of the class members' claims.

49. Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class, she will fairly and adequately protect the interests of the class and she is represented by counsel skilled and experienced in litigating TCPA class actions.

50. The Defendants' actions are applicable to the class and to Plaintiff.

51. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records and databases maintained by Defendants and others.

52.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

## Legal Claims

### Count One:
### Violation of the TCPA's provisions
### prohibiting pre-recorded calls to cell phones

53.     The Defendant violated the TCPA by initiating a pre-recorded call to Plaintiff's telephone number assigned to a cellular telephone service without prior express written consent, or by the fact that it was done on their behalf.

54.     The Defendants' violations were willful or knowing.

55.     The TCPA also permits injunctive relief, which the Plaintiff and the putative class seek by prohibiting the Defendants from using pre-recorded messages to call individuals, absent an emergency circumstance.

.

### Relief Sought

Plaintiff requests the following relief:

A.      That the Court certify the proposed class;

B.      That the Court appoint Plaintiff as class representative;

E.      That the Court appoint the undersigned counsel as counsel for the class;

F.      That the Court enter a judgment permanently enjoining the Defendants from using a pre-recorded message, absent an emergency circumstance.

G.      That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

H. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: July 8, 2021

                                Plaintiff's Counsel,

                                By: */s/ Anthony I. Paronich*
                                      Anthony Paronich
                                      PARONICH LAW, P.C.
                                      350 Lincoln Street, Suite 2400
                                      Hingham, MA 02043
                                      Telephone: (617) 485-0018
                                      Facsimile: (508) 318-8100
                                      Email: anthony@paronichlaw.com